UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIZ CARDOSO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FCA US LLC,<br><br>    Defendant. | Case No. 20-cv-02250-JSC<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 28 |

Plaintiffs filed this lemon law action under California's Song-Beverly Consumer Warranty Act regarding issues with their 2016 Dodge Ram 1500 vehicle. Following mediation, the parties reached a settlement of Plaintiffs' legal claims and Plaintiffs filed the now pending motion for attorneys' fees and costs.[1] (Dkt. No. 28.) After carefully considering the parties' briefs and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the April 1, 2021 hearing, and GRANTS IN PART and DENIES IN PART Plaintiffs' motion for attorneys' fees and costs.

**BACKGROUND**

On June 24, 2016, Plaintiffs Luiz Cardoso and Select Pavers purchased a new 2016 Dodge Ram 1500 manufactured and/or distributed by FCA US, LLC for a total price of $68,177.12. (Dkt. No. 3-1, Complaint at ¶¶ 2, 5.[2]) On October 31, 2019, Plaintiffs reported to the dealer that

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9, 10.)
[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

the vehicle emits a strong coolant smell in the air cabin and overheats.  (*Id*. at ¶ 6.)  The vehicle remained at the dealer, unrepaired, until January 3, 2020.  (*Id*.)  Plaintiffs "informed FCA that the Vehicle was sitting unrepaired due to defects covered under FCA's warranties. FCA declined to repurchase the Vehicle. FCA also declined to provide Plaintiff with a rental vehicle."  (*Id*. at ¶ 7.)  The dealer advised Plaintiffs that the vehicle could not be repaired and FCA sent Plaintiffs a notice advising Plaintiffs that "the defect to his Vehicle is a known problem and can cause a fire."  (*Id*. at ¶¶ 8, 9.)  Plaintiffs retook possession of the vehicle on January 3, 2020 and Mr. Cardoso towed it to his home where it remained "unuseable due to the strong smell, overheating, and fire defects."  (*Id.* at ¶ 10.)

Plaintiffs filed this action in the Alameda County Superior Court on February 14, 2020.  (Dkt. No. 3-1.)  Plaintiffs allege that Defendant violated the Song-Beverly Act, California Civil Code § 1790 et seq., because "[i]n accordance with FCA's warranty, Plaintiffs delivered the Vehicle to a FCA authorized repair facility in this state to perform warranty repairs. Plaintiffs did so within a reasonable time, Plaintiff notified FCA authorized repair facility of the characteristics of the defects. However, FCA representative failed to repair the Vehicle, breaching the terms of the written warranty."  (*Id*. at ¶ 15.)  Defendant thereafter removed the action to this Court based on diversity jurisdiction.  (Dkt. No. 1.)

At the Initial Case Management Conference, the parties were referred to private ADR to be completed by October 30, 2020.  (Dkt. No. 18.)  On November 12, 2020, the parties appeared at a Further Case Management Conference and reported that the case had settled, but that Plaintiffs had not yet received the settlement amount nor had the vehicle been towed.  (Dkt. No. 23.)  The Court held two Further Case Management Conferences on November 19 and December 21, 2020.  (Dkt. Nos. 25, 27.)  At the latter, Plaintiffs confirmed that the settlement had been finalized and the Court set a deadline for Plaintiffs to file the underlying motion for attorneys' fees and costs.  (Dkt. No. 27.)

The motion for attorneys' fees and costs is now fully briefed. (Dkt. Nos. 28, 32, 34.)  Along with its opposition brief, Defendant filed 24 boilerplate evidentiary objections to several paragraphs in the Declaration of Michael Klinzke submitted in support of Plaintiffs' motion for

attorneys' fees and costs (Dkt. No. 29) based on lack of personal knowledge, hearsay, and relevance. (Dkt. No. 32-1.) For the most part, the objected-to evidence is not material to the Court's decision and it is thus unnecessary to resolve Defendant's objections. However, to the extent that Defendant objects to the paragraphs of Mr. Klinzke's Declaration describing the qualifications of the attorneys who worked on this action, Defendants objections are not well-taken and are overruled. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Widrig v. Apfel*, 140 F.3d 1207, 1209-10 (9th Cir. 1998) (declarations by attorneys regarding the prevailing market rate in the community may be enough to establish a reasonable rate in the market).

## DISCUSSION

State law governs attorneys' fees in diversity cases such as this. *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009) ("In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law"). Under California law, buyers who prevail in an action under the Song-Beverly Act are entitled to "the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code section 1794(d). A party is a prevailing party if the court, guided by equitable principles, decides that the party has achieved its "main litigation objective." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 150–51 (2006); *see also Wohlgemuth v. Caterpillar Inc.*, 207 Cal. App. 4th 1252, 1262 (2012) (holding that "consumers who successfully achieve the goals of their litigation through a compromise agreement" may recover attorneys' fees and costs as prevailing parties under the Song-Beverly Act).

Courts calculate attorneys' fees under § 1794(d) using the "lodestar adjustment method." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 784, 818 (2006). The

3

lodestar figure consists of "the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).  A reasonable hourly rate is defined as "that prevailing in the community for similar work." *Id*.  As to the computation of hours, "trial courts must carefully review attorney documentation of hours expended." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).

The parties do not dispute that Plaintiffs, as the prevailing party in this action, are entitled to recoup reasonable attorneys' fees, costs, and expenses under the Song-Beverly Act.  (Dkt. No. 29-3, Settlement Agreement at § 5.)  *See also* Cal. Civ. Code § 1794(d). Instead, the question is whether Plaintiffs' request for $42,727.45 in attorneys' fees and costs is reasonable. Defendant insists that it is not because Plaintiffs' counsels' hourly rates and hours billed are excessive, and Plaintiffs are not entitled to the 1.3 multiplier sought.

**A. Lodestar Calculation**

**1) Reasonable Hourly Rate**

To determine whether counsel's hourly rates are reasonable, the Court looks to the "hourly amount to which attorneys of like skill in the area would typically be entitled." *Ketchum*, 24 Cal. 4th at 1133. "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty*., 815 F.2d 1258, 1263 (9th Cir. 1987). In addition, Civil Local Rule 54-5(b)(3) requires the party seeking fees to submit "[a] brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services."

Here, the bulk of the hours billed were by associate Michael Klinzke who billed 90.6 hours at $340/hour.  (Dkt. No. 29-1.)  Two partners, Gregory Babbitt and Christoper Barry, billed .8 at $545/hour and .2 hours at $624/hour, respectively.  Senior Law Clerk Lilia Guizar billed .1 hours at $150/hour.   Mr. Klinzke, a 2014 law graduate, joined Rosner, Barry & Babbitt, LLP as an associate in 2015.  (Dkt. No. 29 at ¶¶ 35-36.)  Mr. Babbitt is a 1998 law graduate who joined the firm in 2007.  (*Id*. at ¶ 40.)  Mr. Barry is a 1995 law graduate and founding partner of Rosner,

Barry & Babbitt, LLP. (*Id*. at ¶ 43.) Plaintiff contends that judges and arbitrators have consistently upheld Rosner, Barry & Babbitt, LLP's hourly rates in auto fraud and lemon law cases. In his declaration, Mr. Klinzke identifies over 30 cases approving the firm's hourly rates. (*Id*. at ¶ 32.[3]) Although Plaintiff did not attached these decisions or include publication citations, Mr. Klinzke attests that the firm's attorney fee rate was found reasonable in these cases and specifically identifies decisions from 2020 approving the rates of the attorneys here: Mr. Klinzke, Mr. Babbitt, and Mr. Barry. (*Id*.)

In addition, Plaintiffs attach the United States Consumer Attorney Fee Survey Report for 2017-2018. (Dkt. No. 29-24.) "A number of courts, including courts in this District, have also found that the United States Consumer Law Attorney Fee Survey Report may be used as evidence of prevailing rates." *Bratton v. FCA US LLC*, No. 17-CV-01458-JCS, 2018 WL 5270581, at *4 (N.D. Cal. Oct. 22, 2018) (collecting cases). The median rate for California consumer lawyers who handle vehicle cases is $450/hour. (Dkt. No. 29-24 at 63.) In addition, the Metropolitan area tables for San Francisco contained in the Survey Report reflect an average hourly rate for consumer attorneys in San Francisco with 6-10 years experiences such as Mr. Klinzke is $450/hour. (*Id*. at 65.) The average for attorneys with 26-30 years of experience such as Mr. Babbitt and Mr. Barry is $638/hour. (*Id*.)

Plaintiffs have thus met their burden of demonstrating that the hourly rates of Mr. Klinzke of $340/hour, Mr. Babbitt of $545/hour, and Mr. Barry of $624/hour are reasonable. The Court also finds that Ms. Guizar's hourly billing rate of $150/hour is reasonable. *See In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan.

---

[3] To the extent that Defendant objects to this paragraph of Mr. Klinzke's declaration as having "no evidentiary value," as hearsay, and as an "improper attempt to have the Court consider unpublished matters" its objections are overruled. As another court noted when rejecting the same FCA objections as frivolous: "It is well established that decisions by other courts addressing prevailing rates may be considered to determine the reasonableness of rates requested on a fee motion." *Bratton v. FCA US LLC,* No. 17-CV-01458-JCS, 2018 WL 5270581, at *5 (N.D. Cal. Oct. 22, 2018). As the *Bratton* court noted, "to the extent other courts have declined to award the rates Plaintiffs seek, FCA was entitled to offer rebuttal evidence – including cases it contends support lower rates." *Id*. (citing *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) ("The defendant may introduce rebuttal evidence in support of a lower hourly rate.")). Just as in *Bratton*, however, Defendant choose not to do so here.

5

30, 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.") (collecting cases).

### 2) Hours Reasonably Expended

An attorneys' fee award should include compensation for all hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). Here, Plaintiffs' counsel billed 91.7 hours over the course of the slightly more than one year that this action has been pending. (Dkt. No. 29-1.)

Defendant raises three objections to Plaintiffs' billing records. First, Defendant insists that the Court should reduce counsels' hours for time spent reviewing and preparing emails with his client, FCA, defense counsel, and the mediator. Defendant contends that the generic descriptions of the emails make it "impossible to tell why the email was reviewed or generated based on this non-descript explanation." (Dkt. No. 32 at 9-10.) Second, Defendant objects to several entries which are incomplete; the entries state, for example, "Send e-mail to" but the recipient is blank. Finally, Defendant contends that Plaintiffs' request for $4,556.00 for 13.4 hours to prepare this motion for attorneys' fees and costs is excessive.

First, with respect to the emails, the Court has reviewed the billing records and concludes that the percentage of time characterized as reviewing or sending an email is excessive. (Dkt. No. 29-1.) The percentage of the time billed for either "reviewing emails from client" or "e-mail client" is 20 percent of the total time billed. The Court further notes that while these are generally billed at .1 of an hour, the majority of the days which include an entry for such emails include three entries for a total of .3 of an hour. Many days include more. For example, the April 16, 2020 time entries are as follows:

//

| 4/16/2020 | Michael A. Klitzke | e-mail client | 340 | 0.1 | $ | 34.00 |
| 4/16/2020 | Michael A. Klitzke | Review e-mail from client | 340 | 0.1 | $ | 34.00 |
| 4/16/2020 | Michael A. Klitzke | e-mail client | 340 | 0.1 | $ | 34.00 |
| 4/16/2020 | Michael A. Klitzke | Review e-mail from client | 340 | 0.1 | $ | 34.00 |
| 4/16/2020 | Michael A. Klitzke | Review e-mail from client | 340 | 0.1 | $ | 34.00 |
| 4/16/2020 | Michael A. Klitzke | Review e-mail from client | 340 | 0.1 | $ | 34.00 |

(Dkt. No. 29-1 at 5.) There is a similar pattern with respect to emails with defense counsel. For example, on June 25, 2020, counsel billed 1.3 hours for emails back and forth with defense counsel in 13 separate entries. (*Id*. at 8-9.) On September 4, 2020, counsel billed .4 hours for emailing back and forth with defense counsel in 4 separate entries. (Dkt. No. 29-1 at 13; *see also id*. at 14 (September 18, 2020 entries) (same)).) On September 21, counsel billed .8 in 8 separate entries. (*Id*. at 14; *see also id*. at 19 (December 1, 2020 entries (same).) On November 13, 2020, counsel billed 1.1 (in 11 separate entries) for back and forth emails with defense counsel. (*Id*. at 16-17.)

Collectively, *over 40 percent* of the time billed in this action was for back and forth emails with defense counsel, FCA, or Plaintiff, and none of these entries include information regarding the substance of the email exchange. The Supreme Court held in *Hensley* that counsel is not required to record in great detail how each minute of time is expended but should at least identify the general subject matter of his time expenditures. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "Work entries are inadequately vague when the district court is unable to discern how the time spent is attributable to the case at hand." *Center for Food Safety v. Vilsack*, No. C–08–00484 JSW, 2011 WL 6259891, at *8 (N.D. Cal. Oct. 13, 2011). Likewise, excessive billing for non-substantive email exchanges is improper. *See, e.g., Uriarte-Limon v. Leyva*, 2017 WL 5665016, at *4 (C.D. Cal. June 30, 2017) (reducing fee award based in part on "excessive hours devoted to non-substantive email exchanges); *Whitaker v. Beverly Falafel, Inc*., 2020 WL 6494193, at *4 (C.D. Cal. Sept. 15, 2020) ("Counsel routinely billed its client for non-substantive emails involving deadlines and information about new trial dates. The Court finds these entries are unreasonable and strikes them."); *Kries v. City of San Diego*, No. 17-CV-1464-GPC-BGS, 2021

7

1   WL 120830, at *9 (S.D. Cal. Jan. 13, 2021) ("Although attorneys owe a duty to their clients to
2   effectively communicate and the Court does not doubt that Mr. Conger's communication practices
3   were appreciated by his clients, the Court's mandate is to determine whether the hours were
4   reasonably expended, not whether the time spent was in line with each attorney's regular
5   practice."). Accordingly, the Court makes an across-the-board 10 percent deduction to account for
6   counsels' excessive billing for vague email exchanges. *Moreno v. City of Sacramento*, 534 F.3d
7   1106, 1112 (9th Cir. 2008) ("the district court can impose a small reduction, no greater than 10
8   percent—a 'haircut'—based on its exercise of discretion and without a more specific
9   explanation.").

10   Second, as for the incomplete billing entries, Plaintiffs billed for three emails and one letter
11   where the entry is incomplete and does not indicate the recipient of the communication (and as
12   noted above, includes no description of the nature of the email). (Dkt. No. 29-1 at 6 (4/30/20
13   entry), 15 (10/16/20 entry), 19 (12/14/20 entry), 20 (12/21/20 entry).) On reply, Plaintiffs
14   produced the emails and argue that Defendant could have figured out who they were to because
15   they were sent to FCA directly. (Dkt. No. 34 at 6-7.) Plaintiffs insist that it was not "impossible"
16   for Defendant to tell who the emails were to "it just required a very slight amount of effort to
17   determine the origin or destination of these documents." (*Id*. at 6:28-7:10.) But it is Plaintiffs'
18   burden—not Defendant's—to put forward evidence in support of their request for fees. *See
19   Hensley*, 461 U.S. at 437 (as the moving party, Plaintiff "bears the burden of documenting the
20   appropriate hours expended in the litigation and must submit evidence in support of those hours
21   worked."). And the motion is made to the Court—not Defendant—and the Court has no way to
22   know who the email was to. Accordingly, the Court strikes Plaintiffs' request for fees for
23   incomplete time entries. This results in a deduction of $136.

24   Finally, Plaintiffs seek $4,556 for 13.4 hours of work preparing the underlying motion.
25   (Dkt. No. 29-1 at 20.) Generally, fees related to the preparation and defense of a motion for
26   attorneys' fees are recoverable. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1141 (2001). Accordingly,
27   while this amount is a bit more than the Court would expect for a motion such a this, the Court
28   declines to reduce the amount absent a showing that the motion is a template of one previously

1  used by counsel—and Defendant has made no such showing here. *See Pollard v. FCA US LLC*,
2  No. 817CV00591JLSJCG, 2020 WL 57270, at *5 (C.D. Cal. Jan. 3, 2020), appeal dismissed, No.
3  20-55128, 2020 WL 2204270 (9th Cir. Mar. 25, 2020) (finding that 14.5 hours spent on a motion
4  for attorney's fees under the Song-Beverly Act was unreasonable given that it was substantially
5  identical to an earlier motion).

***

Based on the hours and rates discussed above, and taking into account the $3,274 in deductions, Plaintiffs' lodestar amount, without a multiplier, is $28,206.

### B. Whether a Multiplier is Warranted

Each side asks the Court to adjust the lodestar amount: Defendant insists that the Court should apply a negative multiplier and Plaintiffs maintain that a positive multiplier of 1.3 is appropriate. The Court concludes that neither is warranted.

This case did not involve particularly novel or complex issues; however, counsel obtained an excellent result for Plaintiffs. As such, a negative multiplier is not appropriate. On the other hand, an enhancement is unnecessary.  Plaintiffs emphasize the risk associated with counsel representing them on a fully contingent basis, as well as Defendant's delay in resolving the action which further delayed their compensation. However, attorneys' fees are guaranteed to prevailing parties under the Song-Beverly Act and based on Plaintiffs' description of the facts, they had a strong case, making the risk that counsel would receive nothing relatively small. *See Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998) (noting that a fee enhancement may not be appropriate when a statutory guarantee eliminates any uncertainty about whether costs will be awarded to the prevailing party.). As to the delay, the rates the Court has awarded are sufficient to compensate counsel for the cost of any delay in receiving their attorney fees. Therefore, the Court awards the lodestar amount without a multiplier, negative or positive, which it finds to be a reasonable amount in light of all the circumstances.

### C. Costs

Plaintiffs seek $1,933.45 is litigation costs and expenses.  This amount is based on (1) court filing fee ($435); (2) service of summons ($35); (3) postage and photocopying fees ($44.55);

(4) fees for messenger services related to court filings ($138.90); and (5) mediation fees ($1,275).[4] (Dkt. No. 29-2.)  Defendant does not challenge these costs, which the Court finds are reasonable. *See* Cal. Civ. Code section 1794(d) (providing that a prevailing party is entitled to "costs and expenses ... determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of [the] action"); *Jensen v. BMW of N. Am., Inc*., 35 Cal. App. 4th 112, 137 (1995), as modified on denial of reh'g (June 22, 1995) (holding that by including "expenses" in the Song Beverly Act's cost provision, the Legislature intended that the provision would not be limited to the costs that are available under Cal. Code Civ. Proc. Section 1033.5, which defines the items that are generally available to prevailing parties). Accordingly, the Court awards $1,928.45 in litigation costs and expenses.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for attorneys' fees and costs.  The Court awards a total of $30,134.45.

This Order disposes of Docket No. 28.

**IT IS SO ORDERED.**

Dated: March 29, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[4] Plaintiffs' bill of costs also includes $5 in $1 increments for things that do not apply here such as "docket fees under 28 U.S.C. 1923" and "compensation of court-appointed experts."  (Dkt. No. 29-2 at 4.)  The Court deducts these amounts from the total.